# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ANTHONY CASTRO,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>NEVADA DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>　　　　　Defendants. | Case No. 3:21-CV-00158-CLB[1]<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 66] |

This case involves a civil rights action filed by Plaintiff Anthony Castro ("Castro") against Defendants Ward, Jones, and Harris (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 66.) Castro responded, (ECF No. 73), and Defendants replied. (ECF No. 74.) For the reasons stated below, Defendants' motion for summary judgment, (ECF No. 66), is denied in part and granted in part.

**I.　BACKGROUND**

　　**A.　PROCEDURAL HISTORY**

Castro is an inmate in the custody of the Nevada Department Corrections ("NDOC"), who is currently incarcerated at the High Desert State Prison ("HDSP"). On April 5, 2021, Castro filed a civil rights complaint under 42 U.S.C. § 1983 for events that occurred while he was incarcerated at the Lovelock Correctional Center ("LCC"). (ECF No. 1.) On May 17, 2021, Castro filed a first amended complaint ("FAC"), (ECF No. 5), which the Court screened pursuant to 28 U.S.C. § 1915A(a). (ECF No. 9.) Castro's complaint alleges Ward, Jones, and Harris retaliated against him because he tried to obtain a grievance from Jones to report Jones for berating and swearing at inmates. (ECF

---

[1]　The parties consented to the undersigned's jurisdiction to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C.§ 636(c) and Federal Rule of Civil Procedure 73. (*See* ECF No. 36.)

No. 5 at 8-9.) Castro also alleges Ward transferred Castro to a restrictive unit because Castro wanted to file a grievance. (*Id.* at 9.) Finally, Castro alleges that after he was able to file a grievance, Ward or Jones directed Harris to destroy property in Castro's cell. (*Id.* at 10.) Based on these allegations, the Court allowed Castro to proceed on a single First Amendment retaliation claim against Ward, Jones, and Harris (ECF No. 9)

B.   Factual Summary[2]

Castro was a member of LCC's Structured Living Program ("SLP") from April 25, 2019, through September 9, 2019. (ECF No. 66-1.) The SLP is an entirely voluntary program. (ECF No. 66-2 at 9, ECF No. 73 at 41.) Among other goals, the program aims to "[p]rovide a structured physical fitness program" and "a Para-militaristic environment." (ECF No. 66-2 at 8, ECF No. 73 at 40.) The SLP manual emphasizes that applicants "must understand" that if they voluntarily drop from the program, are suspended, or are terminated, they will be reviewed for proper placement into the level system. (ECF No. 66-2 at 9, ECF No. 73 at 41.) If members leave the SLP for any reason other than disciplinary, they may apply to return to the program. (ECF No. 66-2 at 36, ECF No. 73 at 68.)

On September 9, 2019, all members of the SLP were instructed to go to the gym for a "battalion day" workout. (ECF No. 73 at 109.) During the workout, Jones began swearing at the inmates, saying he hated how they were working out, that they were "acting like little fucking girls," and called the inmates "pussies" and "pansies." (*Id.* at 108-109.) Castro told Jones that Jones could not speak to the inmates like that. (*Id.* at 109.) Jones responded that "I can do whatever the fuck I like." (*Id.*) Jones then told Castro to go back to the unit and Castro complied. (*Id.*) When the rest of the SLP returned, Castro was instructed to report to the activity room. (*Id.*)

When Castro arrived in the activity room, he saw a "panel" on the desk. (*Id.*) An inmate receives a panel for not passing a test, violating a general order, or for behavior

---

[2]   The facts stated in this section are undisputed unless otherwise noted herein.

1  not conductive for the program. (ECF No. 66-1 at 3.) Ordinarily, an inmate will be "kicked out" of the SLP if they have three panels while participating in the program. (*Id.*) When Castro went to read what the panel was for, Jones became irate and began swearing at Castro. (ECF No. 73 at 109.) Jones then grabbed the panel from the desk and slid a drop out request form to Castro and told him to sign. (*Id.*) Castro responded that he did not want to quit the program. (*Id.*) Jones continued to yell and swear at Castro. (*Id.*) Castro asked for a sergeant, but Jones refused. (*Id.*) Castro then asked for a grievance, which Jones also refused to provide. (*Id.*) Jones then told Castro to "lock down" and Castro complied. (*Id.* at 110.) Inmates heard Jones tell Castro to go to the activity room and then heard swearing and yelling at Castro. (ECF No. 73 at 102, 105.) An inmate heard Jones tell Castro "Im [sic] not giving you a fucking grievance." (*Id.*)

Later that day, Jones came to Castro's cell and began taking Castro's SLP belongings while continuing to yell and swear at Castro. (ECF No. 73 at 110.) Castro states that Jones knocked over Castro's television, breaking several buttons and cracking the top.[3] (*Id.*) Inmates heard Jones enter Castro's cell, then one inmate describes hearing "a bang, and a crack, come from cell 14" where Castro lives while another describes hearing "a loud cracking, like something hitting the ground come from Cell 14." (ECF No. 73 at 102, 106.) The inmates write in their declarations that Jones exited the cell after they heard the noises. (*Id.*)

The next day, September 10, 2019, Castro was instructed to report to Ward's office. (ECF No. 73 at 110.) Ward told Castro that he would be removed from the SLP. (*Id.*) Castro attempted to explain what had happened with Jones the day before. (*Id.*) Ward "yelled at [him] saying 'You want a grievance? Well I got something for you you're not getting one and when you do file I promise I'll make your life miserable." (*Id.*) Ward then asked Castro "How do you like intake?" (*Id.*) Castro writes that Ward had him

---

[3]   In his sworn declaration, Castro declares that Jones "intentionally" knocked over Castro's television. (ECF No. 73 at 110.) However, there is no evidence in the record that demonstrates Jones's intent to damage Castro's property.

removed from the SLP and placed him in the intake unit the same day. (*Id.* at 111.)

According to his sworn declaration, Castro was finally given access to a grievance on September 15, 2019. (ECF No. 73 at 111.) On September 18, 2019, Ward received and responded to the grievance herself. (*Id.* at 111.) That same day, Harris came to Castro's cell. (*Id.*) Harris told Castro he "got a call to tear [Castro's] house up." (*Id.*) Harris then proceeded to dump all of Castro's belongings on the ground, confiscated his television, and told him to "stop filing grievances." (*Id.*) Castro writes that his cellmate's belongings were not touched, and no other cells were searched that day. (*Id.*)

Prior to entering the SLP, Castro was in one of LCC's segregation units. (ECF No. 66-5.) Castro was removed from SLP on September 9, 2019. (*Id.*) Castro was removed from the program after only two panels. (ECF No. 66-1 at 3.) On September 10, 2019, he was transferred to a housing unit which is both a Level 2 and Level 3 unit and is less restrictive than a segregation unit. (*Id*; ECF No. 66-3 at 2.) In Harris's sworn answers to Castro's interrogatories, Harris states that non-defendant Unit Sergeant Jonathan Ball ordered the search of Castro's cell on September 18, 2019. (ECF No. 66-14 at 5.) In the same document, Harris also writes that he recalls searching three cells in Castro's unit on September 18, 2019. (*Id.*) Harris also writes that he confiscated Castro's television because the buttons were broken and therefore not allowed. (*Id.*)

### C.     Motion for Summary Judgment

On June 21, 2023, Defendants filed the instant motion for summary judgment arguing summary judgment should be granted because: (1) Defendants are entitled to qualified immunity because no constitutional violation occurred; and (2) Castro failed to exhaust his administrative remedies. (ECF No. 66.) Although Defendants frame their first argument as asserting the affirmative defense of qualified immunity, the main substance of that argument focuses on whether a constitutional violation occurred.

On August 15, 2023, Castro responded. (ECF No. 73.) Castro argues he was terminated from the SLP program for "exercising his right to grieve and complain Jones conduct." (ECF No. 73 at 19.) Castro argues he tried to file a grievance on the day he

was terminated from the SLP and therefore the retaliation occurred in close proximity to his protected conduct. (*Id.* at 16-17.) Castro also disputes that after being terminated from the SLP, he was placed in a less restrictive unit than prior to his entry. (*Id.* at 20.)

Defendants replied on August 29, 2023. (ECF No. 74.) Defendants again argued they are entitled to qualified immunity because no constitutional violation occurred. (*Id.*) Defendants argue no retaliation occurred and that any alleged adverse actions were caused by independent and proper grounds. (*Id.*)

Defendants support their motion for summary judgment with multiple exhibits which are not accompanied by the required authenticating affidavit. "[U]nauthenticated documents cannot be considered on a motion for summary judgment. To be considered by the court, documents must be authenticated by and attached to an affidavit that meets the requirements of Fed. R. Civ. P. 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) (citation and internal quotation marks omitted); *see also Bias v. Moynihan*, 508 F.3d 1212, 1224 (9th Cir. 2007); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550–51 (9th Cir. 1990.) Therefore, the Court will only rely on exhibits which do not require an authenticating affidavit. Fed. R. Civ. P. 56 advisory committee's note (2010) ("28 U.S.C. § 1746 allows a written unsworn declaration, certificate, verification, or statement subscribed in proper form as true under penalty of perjury to substitute for an affidavit.").

**II.   LEGAL STANDARD**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not

5

material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v.*

*Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a pro se litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III. DISCUSSION

#### A. Retaliation

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Within the prison context, a viable retaliation claim has five elements: (1) a state actor took some adverse action against the inmate, (2) because of, (3) the inmate's protected conduct, and that the action, (4) chilled the inmate's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68. The adverse action must be such that it "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quoting *Rhodes*, 408 F.3d at 568).

To prevail against Defendants' motion for summary judgment , Plaintiff must demonstrate a triable issue of material fact on each element of his retaliation claim. *Brodheim*, 584 F.3d at 1269 n.3. An inmate must submit evidence, either direct or

circumstantial, to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt v. Rowland*, 65 F.3d 802, 806-07 (9th Cir. 1995). "[A] plaintiff must show that his protected conduct was 'the "substantial" or "motivating" factor behind the defendant's conduct.'" *Brodheim*, 584 F.3d at 1271 (quoting *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The plaintiff "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to him, presents a genuine issue of material fact as to [the defendant's] intent.'" *Id.* (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

To raise a triable issue as to motive, plaintiff must offer "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted). Circumstantial motive evidence may include: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse ... action were false and pretextual." *Id.* (internal citation and quotation marks omitted). However, "mere speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

The Court's screening order allowed Castro to proceed on his retaliation claim based on two adverse actions: (1) Harris's cell search and (2) Ward transferring Castro to the intake unit. (ECF No. 9 at 7.) The Court outlined Castro's claim as follows:

> Based on the allegations, Castro tried to obtain a grievance from Jones to report Jones's behavior. Instead of obtaining a grievance from Jones or Ward, Ward transferred Castro to a restrictive unit because Castro wanted to file a grievance. Additionally, it appears that after Castro was able to file a grievance, Ward or Jones had Harris destroy the property in Castro's cell.

(ECF No. 9 at 7.) The Court will discuss each portion of the retaliation claim in turn.

///

///

### B. Harris's Cell Search

First, the Court will evaluate the portion of the retaliation claim based on Castro's claim that either Jones or Ward directed Harris to perform a cell search. As the moving party, Defendants bear the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. Defendants argue Harris conducted a search of Castro's cell because he was ordered to conduct a random cell search by a non-defendant sergeant and not in retaliation for Castro's filing of a grievance. (ECF No. 66 at 11.) To support their argument that Harris did not confiscate Castro's television in retaliation, Defendants point to Harris's sworn discovery responses stating that his sergeant directed him to conduct random cell searches, which he performed over multiple days including the day Castro's cell was searched. (ECF No. 74 at 4 (citing ECF No. 66-14).) Defendants also provide evidence that Castro's cell was not the only cell searched, as Harris writes in his sworn responses to Castro's discovery requests that he recalls searching three cells in Castro's unit on September 18, 2019. (*Id.*) Harris also writes that he only confiscated Castro's television because the buttons were broken and therefore was not allowed. (*Id.*) By providing this evidence, Defendants have met their initial burden on summary judgment to show that their actions were not taken for a retaliatory purpose and the burden shifts to Castro to establish that a genuine issue of material facts exists. *Matsushita*, 475 U.S. at 586.

Now, the burden shifts to Castro to "come forth with evidence from which a jury could reasonably render a verdict in [his] favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Castro writes in his sworn declaration that Harris told Castro to "stop filing grievances" after conducting the cell search and confiscating the television. (ECF No. 73 at 111.) Castro also provides evidence of the closeness in time between when he was given access to a grievance on September 15, 2019, and September 18, 2019, when Ward received and responded to the grievance and Harris conducted the cell search. (ECF No. 73 at 111.) Harris's verbal opposition to Castro's speech by saying "stop filing grievances" and the proximity in time between the

protected speech and the alleged retaliation are both sufficient to provide circumstantial evidence of retaliation. *McCollum*, 647 F.3d at 882.

Here, both parties have met their burden for summary judgment and the Court must determine whether reasonable minds could differ when interpreting the record and does not weigh the evidence or determine its truth. *Velazquez*, 793 F.3d at 1018. Given the record before the Court, there is sufficient evidence for a reasonable jury to find in favor of either party. Therefore, the Court cannot not grant Defendants' motion for summary judgment as to the cell search on the merits of this claim.

### 1. Exhaustion of Administrative Remedies

Defendants argue, however, that they are entitled to summary judgment on this aspect of Castro's claim because Castro failed to exhaust his administrative remedies as to this issue. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id*. at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing *Woodford*, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id*. at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id*. at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

Here, Castro's claim is based entirely on alleged retaliation for filing a grievance. In essence, the entire substance of Castro's claim argues that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile" because he tried to report staff misconduct and faced adverse consequences as a result. *Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172). Therefore, the Court finds it inappropriate to grant summary judgment for Defendants on the issue of exhaustion of administrative remedies as to this aspect of Castro's retaliation claim.

### 2. Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity as to the retaliation claim as to this aspect of Castro's claim. The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir.

2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The Court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).

Defendants contend they are entitled to qualified immunity because they did not violate a clearly established right. (ECF No. 66.) Defendants argue there is nothing in this case that would have put them on notice that they were in violation of Castro's First Amendment rights against retaliation when they conducted a random cell search and confiscated Castro's unpermitted property. (*Id.* at 12.) However, these arguments assume

that Defendants' version of events occurred. As summary judgment is denied because there is a genuine dispute of material facts, qualified immunity is not appropriate at this time.

Based on Castro's version of events, it was clearly established at the time of the incident that a prison official violates the constitution when they retaliate against prisoners for filing a grievance to report staff misconduct. *Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (recognizing that "a corrections officer may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct"). Taking the facts in the light most favorable to Castro, a fact finder could determine that Defendants violated Castro's clearly established rights. Therefore, Defendants are not entitled to summary judgment on this aspect of Castro's retaliation claim based on qualified immunity.

### C. Ward's Transfer of Castro to the Intake Unit

Now the Court turns to the second alleged incident of retaliation - Ward's transfer of Castro to the intake unit for filing a grievance. Again, Defendants bear the initial burden on summary judgment of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. Defendants argue there is no evidence of retaliation as Castro was terminated from the SLP due to his own conduct and was transferred into a unit which was less restrictive than the one he was in prior to entering the SLP. (ECF No. 74 at 3.) Defendants argue it was already determined that Castro would be terminated from SLP and therefore be returned to housing Level 2 on September 9, 2019, prior to filing his grievance on September 16, 2019. (ECF No. 66 at 11.) Defendants argue that the time disparity between his removal from SLP and the filing of his grievance negates a finding of causal connection. (*Id.*)

Additionally, Defendants provide a declaration from an Associate Warden which shows that Castro was in one of LCC's segregation units prior to entering the SLP, a voluntary program, and was later transferred to a unit which is less restrictive than the segregation unit. (ECF No. 74 at 3, ECF No. 66-5.) The SLP manual emphasizes that applicants "must understand" that if they voluntarily drop from the program, are

suspended, or are terminated, they will be reviewed for proper placement into the level system. (ECF No. 66-2 at 9, ECF No. 73 at 41.) This is sufficient evidence to show that Castro's transfer to intake was not because of retaliation but rather due to his termination from SLP. Defendants' evidence also shows that although intake was more restrictive than SLP, Castro was in a less restrictive unit than he was in prior to electing to enter SLP. This is sufficient to show that Castro was not transferred to intake out of retaliation but rather because he was leaving the SLP. Therefore, Defendants have met their initial burden on summary judgment and the burden shifts to Castro to establish that a genuine issue of material facts exists. *Matsushita*, 475 U.S. at 586.

Castro argues he was terminated from the SLP program for "exercising his right to grieve and complain Jones conduct." (ECF No. 73 at 19.) However, the screening order allowed Castro to proceed based on his transfer to intake, not based on his termination from SLP. (ECF No. 9 at 7.) In his sworn declaration, Castro states that Ward asked him "how do you like intake?" (ECF No. 73 at 111.) However, this comment, without more, is insufficient to show that Ward was acting in a retaliatory manner. As discussed above, when an inmate leaves SLP, they must be reclassified as a matter of course. Castro does not provide evidence to show that Ward's comment about intake was more than telling Castro, in an albeit snarky form, where he would be reclassified after leaving SLP. Castro's "mere assertions and 'metaphysical doubt as to the material facts'" will not defeat a properly supported and meritorious summary judgment motion." *Matsushita*, 475 U.S. at 586-87. Therefore, Defendants are entitled to summary judgment as to Castro's transfer to intake because there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law.[4] Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 322.

///

---

[4] Because the Court finds that Defendants are entitled to summary judgment with respect to the merits as to this portion of the retaliation claim, it need not reach the issue of qualified immunity.

## IV. CONCLUSION

For good cause appearing, and for the reasons stated above, **IT IS ORDERED** that Defendants' motion for summary judgment, (ECF No. 66), be **DENIED** as to Castro's retaliation claim based on Harris's cell search.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment, (ECF No. 66), be **GRANTED** as to Castro's retaliation claim based on his transfer to intake.

**IT IS FURTHER ORDERED** that the parties shall submit a joint pretrial order within 30 days of the date of this order.

**IT IS SO ORDERED**.

DATED:  October 2, 2023 .

_____
**UNITED STATES MAGISTRATE JUDGE**